**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SALLY FITZGERALD, an individual; on behalf of herself and all others similarly situated,**<br><br>        **v.**<br><br>**GRAND CIRCLE, LLC d/b/a OVERSEAS ADVENTURE TRAVEL** | **CIVIL ACTION**<br><br>**NO. 20-2586** |

MEMORANDUM RE: MOTION TO DISMISS AND/OR COMPEL ARBITRATION
_____

**Baylson, J.**                                                                                        **October 20, 2020**

### I.        Introduction

Plaintiff Sally Fitzgerald purchased tickets for international travel, worth over $9,000, on

Grand Circle LLC's cruise line.  This trip would have taken her across the Atlantic Ocean to tour

Africa.  But it was scheduled to depart July 25, 2020, a historically unfortunate time to plan on a

cruise.  Due to the COVID-19 pandemic, Grand Circle cancelled Fitzgerald's trip.  In exchange, it

offered her only the opportunity to reschedule the trip, not a reimbursement.  Fitzgerald sued Grand

Circle for various tort and contract claims stemming from its refusal to refund her purchase.

Grand Circle now moves this Court to dismiss Fitzgerald's claims, in favor of compelling

JAMS arbitration based on the terms binding the ticket purchase.  Fitzgerald argues that the

arbitration clause is unenforceable, since two of the arbitration terms would violates JAMS' own

rules for arbitration.  For the foregoing reasons, the Court will sever the unenforceable restrictions

1

from the arbitration agreement but otherwise grant Grand Circle's motion in part by staying the proceedings and compelling the parties to arbitration.

## II.     Factual and Procedural History

The Court assumes that following alleged facts — taken from Fitzgerald's Amended Complaint (ECF 11) — are true for the purposes of the present motion.

Fitzgerald, a resident of Collegeville, Pennsylvania, purchased cruise tickets from Grand Circle on July 8, 2019.  Am. Compl. ¶ 14.  The cruise she selected would have been from July 25, 2020 through August 11, 2020, and it would have taken her around to South Africa, Botswana, Zambia, and Zimbabwe.  Id.  She paid $9,258.00 for the trip.  Id. at ¶ 15.  But in March 2020, the United States, as well as African nations, began instituting travel bans and stay-at-home orders as a result of the COVID-19 pandemic.  Id. at ¶¶ 16, 17.  Grand Circle cancelled Fitzgerald's trip.  Id. at ¶ 17.

On May 6, 2020, Fitzgerald called Grand Circle's travel support hotline to seek a refund of her ticket.  Id. at ¶ 18.  There, she was told that Grand Circle would not provide refunds and "rescheduling her trip was the only option."  Id.  On May 18, 2020, Fitzgerald again called the support center.  Id. at ¶ 21.  The supervisor confirmed that Grand Circle would not make refunds for any customers; "no exceptions would be made."  Id.

Fitzgerald sued Grand Circle on June 1, 2020, on behalf of a proposed class of the Grand Circle ticket purchasers who were denied refunds.  ECF 1.  Grand Circle moved to dismiss the complaint and compel arbitration, ECF 7, but Fitzgerald amended her complaint, ECF 11, and the Court denied the first motion to dismiss as moot.  ECF 12.

Grand Circle renewed its motion to dismiss and compel arbitration on August 28, 2020.

ECF 13.   It included the ticket purchase agreement, which contains the arbitration clause in

question, with its motion.  ECF 13-3.  Fitzgerald responded on September 11, 2020, ECF 14, and

Grand Circle replied on September 18, 2020.  ECF 15.

## III.     Terms of Agreement

Grand Circle has provided a copy of the Overseas Adventure Travel Passenger Agreement

("the Agreement"), ECF 13-3, which contains the contract terms in question.   The arbitration

clause states, in full:

> Agreement to Arbitrate; Forum: You agree that any claim against or dispute with
> the Company, whether based on contract, or tort, or statutory, constitutional or other
> legal rights, including without limitation claims based on bodily injury, illness to
> or death of a passenger, or alleged violations of civil rights, discrimination,
> consumer or privacy laws, or other statutory, constitutional or legal rights, or for
> any losses, damages or expenses relating to or in any way arising out of or
> connected with this Passenger Agreement or your tour or cruise shall be referred to
> and resolved exclusively by binding arbitration to be administered and conducted
> by JAMS under its then-existing rules using one mutually selected arbitrator or, if
> the parties cannot agree on an arbitrator, using an arbitrator selected by JAMS. In
> the event that the parties agree to use another private alternative dispute resolution
> provider in lieu of JAMS, then the arbitration shall be administered and conducted
> by that provider under its then-existing rules using one mutually selected arbitrator,
> or, if the parties cannot agree on an arbitrator, using an arbitrator selected by the
> agreed provider. The arbitration shall be held in Boston, Massachusetts to the
> exclusion of any other forum, and you consent to jurisdiction and waive any
> objections to arbitration proceeding in Boston, Massachusetts. You agree that the
> costs of the arbitration shall be split between the parties. The arbitrator, and not any
> federal, state, or local court or agency, shall have exclusive authority to resolve any
> dispute relating to the interpretation, applicability, enforceability, conscionability,
> or formation of this contract and the arbitration agreement, including but not limited
> to any claim that all or any part of this Passenger Agreement is void or voidable.
> Any action to enforce the arbitrator's decision shall be brought in the state or federal
> courts in Boston, Massachusetts. In the event the arbitration provision is deemed
> unenforceable by an arbitrator or court of competent jurisdiction for any reason,

3

then and only then, the provisions of subsection (c) below governing forum shall exclusively apply to any lawsuit involving claims described in this subsection.

ECF 13-3, at 14–15.  The Agreement also contains a severance clause and a Massachusetts choice-of-law clause.  Id. at 15, 16.

## IV.     Legal Standard

Defendant Grand Circle brings this motion to dismiss and/or compel arbitration under Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act ("FAA").  Pursuant to the FAA, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."  Guidotti v. Legal Helpers Debt Resolution LLC, 716 F.3d 764, 776 (3d Cir. 2013) (citations omitted).  In those cases, the Court should review the provided documents and the allegations of the complaint for a "recognized legal basis for rejecting the affirmative defense [of arbitrability]."  Id. at 773–74.  But "a plaintiff may bring a challenge to court claiming that an agreement to arbitrate is unenforceable based on any of the 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 228–29 (3d Cir. 2012) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)); see also 9 U.S.C. § 2.

If the Court compels the parties to arbitration, "a stay, rather than a dismissal, is the required course of action."  Quilloin, 673 F.3d at 227 n.2.

4

## V.    Parties' Contentions

### a.  Plaintiff's Arguments

Fitzgerald does not dispute that she entered into the Agreement, but rather that the arbitration clause is unenforceable because two of its restrictions conflict with JAMS' own rules for providing arbitration.  Opp. Br. at 3.  JAMS, the arbitrator-of-choice for the Agreement, administers arbitrations "only if the contract arbitration clause and specified applicable rules comply with" JAMS' Consumer Minimum Rules.  JAMS POLICY ON CONSUMER ARBITRATIONS PURSUANT TO PRE-DISPUTE CLAUSES MINIMUM STANDARDS OF PROCEDURAL FAIRNESS at 3, https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Consumer_Min_Stds-2009.pdf (last visited October 9, 2020) ("JAMS Rules").

Fitzgerald claims that two contradictions between the Agreement and the JAMS Rules prevent arbitration:

- The Agreement requires that the arbitration occur in Boston, Massachusetts.  Opp. Br. at 3.  But Rule 5 requires that the "consumer must have a right to an in-person hearing in his or her hometown area."  JAMS Rules at 3.  Fitzgerald lives in Collegeville, Pennsylvania.

- The Agreement requires that consumer-plaintiffs pay $1000 in arbitration fees.  Opp. Br. at 3.  But Rule 7 caps the amount consumers can be required to pay at $250, with the company to bear the remainder of costs.  JAMS Rules at 3.

Because JAMS Rules would prevent the arbitrator from assuming oversight of the present case, Fitzgerald argues that proposed forum is illusory, and the arbitration clause is unenforceable

5

because there would be no one to arbitrate.  Opp. Br. at 5 (citing MacDonald v. CashCall, Inc.,

883 F.3d 220, 232 (3d Cir. 2018)).[1]

     b.  Defendant's Arguments

Grand Circle responds that Fitzgerald's rule-based conflicts are "ancillary, procedural

term[s]," Reply Br. at 2, that "cannot invalidate the strong federal policy favoring arbitration." Id.

at 4.  Where strict interpretation of an arbitration clause would render it unenforceable, the relevant

question is whether the conflicting terms are "integral" such that they cannot be severed without

"defeat[ing] the central purpose of the contract." Id. at  5 (citing MacDonald, 883 F.3d at 230).

Instead, Grand Circle contends that Fitzgerald must raise these issues in Boston, either in

arbitration or in the Agreement's back-up venue of Massachusetts courts.  Id. at 6.[2]

## VI.    Analysis

The parties disagree on very few points.  Both agree that they consented to an arbitration

agreement.  Both agree that two restrictions on arbitration violate JAMS' restrictions on what cases

it will arbitrate.  They disagree, however, on what to do about those conflicts:  Fitzgerald contends

that they make the whole arbitration clause unenforceable; Grand Circle contends that the

---

[1] Grand Circle also argues that the Court should dismiss Fitzgerald's Amended Complaint for
failure to comply with the Agreement's venue provision and bar on class action claims.  The Court
must reserve those issues for the arbitrator's determination, as prescribed by the Agreement itself,
once it has determined that the agreement to arbitrate is enforceable.  See Williams v. Medley
Opportunity Fund II, LP, 965 F.3d 229, 237 (3d Cir. 2020) (The district court may only determine
whether the delegation clause — the clause that agrees to leave questions of arbitrability to the
arbitrator — is enforceable before compelling arbitration.)

[2] The Agreement permits litigation in Massachusetts courts only if "the arbitration provision is
deemed unenforceable." ECF 13-3 at 15.  As discussed further in Section VI, the Court finds that
only two ancillary terms of the arbitration provision are unenforceable, not the provision in its
entirety.   Therefore the Agreement does not mandate that Fitzgerald re-file this suit in
Massachusetts court when she may still be compelled to JAMS arbitration.

enforceability of the arbitration clause is a question for the arbitrator.  The answer lies somewhere in between.

Generally, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."  Williams, 965 F.3d at 237; accord Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 10 (1st Cir. 2009) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).  But that cannot be the case where the rules of the agreement and the rules of the arbitrator conflict such that there *is no arbitrator to analyze arbitrability*.

It is undisputed that the Agreement, as written, would violate JAMS Consumer Minimum Rules.  Based on JAMS' website, the arbitrator could not take the case as the Agreement is written. There is no arbitrator who is located both in Boston, Massachusetts and within Fitzgerald's "hometown area" of Collegeville, Pennsylvania who could settle any of these issues.  The Court therefore finds that the forum, as required by the Agreement, is illusory.  See MacDonald, 883 F.3d at 227–28 (A forum was "nonexistent" where the forum refused partake in the arbitration.).

This does not end the inquiry, however.  An "arbitral forum's nonexistence does not automatically invalidate the arbitration agreement" where "the agreement's severability clause allows invalid provisions, such as the selection of an illusory forum, to be severed."  Id. at 230. To determine whether the invalid provision is severable, the court must look to the contract's governing state law, id., in this case, Massachusetts law.

An arbitration agreement term is severable where it is not integral — or "central to the mechanism for resolving the dispute between the parties."  Feeney v. Dell Inc., 908 N.E. 2d 753, 769 (Mass. 2009) (citation omitted).  "[A]n arbitration agreement will not fail because of the

unavailability of a chosen arbitrator unless the parties' choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." Licata v. GGNSC Malden Dexter LLC, No. SUCV2011-02815-A, 2012 WL 1414881, at *8 (Super. Ct. Mass. Mar. 14, 2012). And, if "the offending term can be severed in accordance with the terms of the arbitration agreements while preserving the arbitral forum," the Court should do so. Machado v. System4 LLC, 989 N.E. 2d 464, 472 (Mass. 2013).

Clauses regarding forum location and fee-splitting are logistical concerns and can be severed while maintaining the core agreement to arbitrate. Two recent cases in the Northern District of California, faced with unenforceable location requirements and fee-allocation terms, found that severance would not harm the intent of the agreements but would remedy the conflicts; they did so and compelled arbitration. See Lang v. Skytap, Inc., 347 F. Supp. 3d 420, 433–34 (N.D. Cal. 2018); Pope v. Sonatype, Case No. 5:15-cv-00956-RMW, 2015 WL 2174033, at *4, 6–7 (N.D. Cal. May 5, 2015).

The Court will do the same here. The Agreement reserves all issues of arbitrability for a JAMS arbitrator. But that relies on the presumption of a non-illusory arbitrator. Without severing two of the Agreement's restrictions, JAMS cannot accept this case. The Court accordingly severs the requirements that arbitration occur in Boston and that the parties equally divide costs, and it will allow the JAMS arbitrator to resolve all other arbitrability and merits issues, as required by the Agreement between the parties.

## VII. Conclusion

For the reasons set forth above, the Court severs the Agreement's location requirement of Boston Massachusetts and fee-splitting requirement, stays the proceedings in the present court,

and compels arbitration.  Grand Circle's Motion is GRANTED in part and DENIED in part.  An

appropriate Order follows.

O:\CIVIL 20\20-2586 Fitzgerald v Grand Circle\20cv2586 Memorandum Opinion re Second Motion to Dismiss.Arbitration.docx

9